ROCKY MOUNTAIN FESTIVALS, INC.,
d/b/a Colorado Renaissance Festivals,
Inc., Petitioner,

v.

PARSONS CORPORATION and
James Miller, Respondents.

No. 09SC451.

Supreme Court of Colorado,
En Banc.

Nov. 8, 2010.

As Modified Dec. 13, 2010.

Rice LLC, T.R. Rice, Greenwood Village, Colorado, Attorneys for Petitioner.

Davis Graham & Stubbs LLP, R. Kirk Meuller, Damian J. Arguello, Denver, Colorado, Attorneys for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

This dispute arises out of a prior action between the Town of Larkspur, Colorado (the "town") and Rocky Mountain Festivals, Inc. (the "festival") concerning allegedly unpaid water and wastewater tap fees. The town had based its demand for roughly $1.6 million in unpaid tap fees on a report prepared by Parsons Corporation and Jim Miller (collectively "Parsons"). In that prior action the trial court determined that Parsons' report had been substantially flawed, and that the festival in fact owed only a small fraction of the demanded fees. Subsequently, the festival brought the present action against Parsons, arguing that Parsons' wrongful conduct caused it to incur unnecessary litigation costs and attorneys' fees, which should be compensable as damages under the so-called "wrong-of-another doctrine." The trial court granted Parsons' motion for summary judgment, and the court of appeals affirmed that decision in an unpublished opinion, *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, No. 08CA349, 2009 WL 712335 (Colo.App. Mar. 19, 2009). Both courts reasoned that the festival's partial liability in the underlying dispute precluded it from pursuing attorneys' fees under the wrong-of-another doctrine and therefore from proving damages. Because this issue arose in the limited context of summary judgment, neither court otherwise addressed the viability of the festival's negligence claim.

Due the limited scope of the trial court and court of appeals' decisions, we granted certiorari to address the narrow issue of whether litigation costs and attorneys' fees should be recoverable under the wrong-of-another doctrine where a plaintiff has not been entirely successful on all its claims in the underlying litigation.[1] We conclude that a plaintiff can seek damages under the doctrine for a subset of the claims litigated against another party where the trial court, in its discretion, determines that the claims for which litigation costs are sought were premised on different facts and pursued under different legal theories than those comprising the remainder of the underlying dispute.

Having concluded that the festival is not barred from its pursuit of fees as a matter of law, we reverse the court of appeals' judgment.

## II. Facts and Procedure

The festival operates a renaissance fair on summer weekends in the town. The town has a year-round population of around 250 people, while the festival attracts roughly 10,000 people per day when open. As such, the festival is a prominent figure in the town's tax revenues and its water systems.

In 2003, the town hired Parsons to diagnose and resolve problems with its water and wastewater systems. After assessing the festival's water and wastewater services usage, Parsons concluded that the festival had been using substantially more of both than it had been paying for. Parsons' analysis was apparently substantially flawed. Based on Parsons' analysis, however, the town issued a letter to the festival demanding roughly $1.6 million in tap fees to defray the cost of the festival's alleged increases in water and wastewater usage. Of that, roughly $1 million was related to the festival's wastewater use, while the remaining $600,000 was for water usage. At the conclusion of the letter, the town informed the festival that, if it had not received payment on this special billing within 45 days, water service to the property might be disconnected.

1. The issues on which we granted certiorari read as follows:

(1) Whether claims based upon the "wrong-of-another" under *Elijah v. Fender*, 674 P.2d 946 (Colo.1984), can be pursued only in instances where there is a complete absence of fault on the part of a plaintiff with respect to each and every claim asserted in the prior case.

(2) Whether Rocky Mountain Festivals was obligated, in responding to a motion for summary judgment, to prove up its damages even though the absence of damages was not one of the issues raised as the basis for the motion.

In response, the festival sought injunctive relief from having to pay the tap fees in an action separate from the one at issue here, *Rocky Mtn. Festivals, Inc. v. Town of Larkspur*, No. 03CV393, slip op. (Colo.Dist.Ct., Mar. 14, 2006). Among other things, the festival argued that the tap fees assessed by Parsons for the town were contrary to certain town ordinances, and that the festival was being asked to fund maintenance and improvements to the town's water infrastructure that would benefit the town at large. The town cross-claimed seeking to recover the full amount set out in the letter. The trial court concluded that it was "without significant dispute" that the festival owed at least some unpaid water tap fees, though it ultimately ordered the festival to pay only $100,000 of the town's $600,000 bill for water usage. As to the wastewater claim, however, the trial court concluded that Parsons' analysis had been deficient on numerous points. The trial court determined that Parsons' wastewater assessment relied on faulty assumptions, used "incredible" data, and stated that its inaccuracy was made "abundantly clear by other evidence introduced." The court concluded that the festival had, if anything, *overpaid* the town for wastewater usage and so granted the festival an injunction against that portion of the town's billing. Concluding its order, the trial court in that case noted that, because both parties had prevailed to some extent on their claims, an award of attorneys' fees would be inappropriate.

The festival subsequently sought an amendment to that order, arguing that the town's claim to $1 million in wastewater tap fees was substantially frivolous because the underlying report by Parsons was without believable evidentiary support and the town had not attempted to verify the information contained in the report. After reviewing briefing on that issue, the trial court issued a minute order denying the motion.

Following that prior case, the festival brought suit against Parsons directly under several legal theories of contract and tort, essentially arguing that Parsons' faulty advice to the town had caused the festival to incur litigation costs and attorneys' fees in the prior case that they should be entitled to recover. Among the legal theories advanced by the festival that survives for our review is whether the element of damages essential to its negligence claim may be proved by attorneys' fees based on the wrong-of-another doctrine.

Parsons moved for summary judgment. The trial court concluded that, although Parsons owed a legal duty of care to the festival, the festival was barred from its pursuit of attorneys' fees as damages because it had been partially at fault in the underlying litigation, as evidenced by the order directing it to pay $100,000 for water tap fees. The court of appeals affirmed the trial court's order relying on essentially the same reasoning. Specifically, the court of appeals concluded that because the festival owed the town almost $100,000, it was at fault in the prior case and therefore barred from relying on the wrong-of-another doctrine to pursue attorney fees as damages. The court of appeals affirmed the trial court's decision to grant the motion for summary judgment on these narrow grounds.

The festival timely petitioned for certiorari, arguing that its partial liability on some claims in the prior litigation should not preclude its recovery for expenses incurred in litigating other claims on which it was wholly successful. We granted certiorari to resolve this narrow issue and agree with the festival that a claim-by-claim assessment of damages is appropriate in some circumstances. Accordingly, we reverse the court of appeals.

### III. Analysis

We begin by clarifying the operation of the wrong-of-another doctrine and discussing those circumstances in which an injured party may seek litigation costs and attorneys' fees as a measure of damages. We then turn to the issues presented here, where the summary-judgment posture of the case entitles the festival to the benefit of all favorable inferences reasonably drawn from the undisputed facts. *See In re Tonko*, 154 P.3d 397, 402 (Colo.2007).

## A. The Wrong of Another Doctrine

 Colorado—like many states [2]—has long-recognized that litigation expenses and attorneys' fees incurred by a party in one case may, in certain circumstances, be an appropriate measure of damages against a third party in a subsequent action. *See Elijah v. Fender*, 674 P.2d 946, 951 (Colo.1984); *see also Bernhard v. Farmers Ins. Exchange*, 915 P.2d 1285, 1288 n. 3 (Colo.1996) (discussing the broad range of applications of the wrong-of-another doctrine in Colorado); *Publix Cab Co. v. Colo. Nat. Bank of Denver*, 139 Colo. 205, 230, 338 P.2d 702, 715 (1959) (recognizing the wrong-of-another doctrine in principle); *Sun Indem. Co. of N.Y. v. Landis*, 119 Colo. 191, 194, 201 P.2d 602, 603 (1948) (same). As this court noted in *Elijah*, " '[w]hen the natural and probable consequence of a wrongful act has been to involve [a] plaintiff in litigation with others, the general rule is that the reasonable expenses of the litigation may be recovered from the wrongdoer.' " 674 P.2d 946, 951 (Colo.1984) (quoting *Int'l St. Bank of Trinidad v. Trinidad Bean & Elevator Co.*, 79 Colo. 286, 287, 245 P. 489, 489 (1926) and approving *McNeill v. Allen*, 35 Colo.App. 317, 534 P.2d 813, 819 (Colo.App.1975)). Of course, this is not to say that the wrongful act must be the *sole* cause of the prior litigation. *See Stevens v. Moore & Co. Realtor*, 874 P.2d 495, 496–97 (Colo.App.1994). Nor must the plaintiff have been a defendant in the prior litigation in order to avail himself of this wrong-of-another doctrine. *Elijah*, 674 P.2d at 951. Instead, he could have been "placed in a position of having to bring suit as plaintiff to defend his rights." *Id.; see also Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380 (Iowa 1983) ("[A] person who, through the tort of another, has been required to act in the protection of his interests by *bringing or defending* an action against a third person is entitled to recover compensation from the tortfeasor for expenditures thereby incurred." (emphasis added)).

 Despite its long history in Colorado, the record developed below lays bare some confusion as to the application and operation of the wrong-of-another doctrine. The doctrine does not establish a stand-alone cause of action, *see Kamyr, Inc., v. Boise Cascade Corp.*, 268 Or. 130, 519 P.2d 1031, 1033–34 (1974),[3] nor is it an exception to the so-called American rule that parties are responsible for their own litigation costs and fees.[4] Rather, the doctrine is but an acknowledgement that the litigation costs incurred by a party in separate litigation may sometimes be an appropriate measure of compensatory damages against another party. *See Shen v. Leo A. Daly Co.*, 222 F.3d 472, 479 (8th Cir.2000) (describing the American Rule as not barring recovery of attorneys' fees incurred against a third party because such an award, "in essence, is compensatory"); *Griffin v. Bredouw*, 420 P.2d 546, 548 (Okla.1966) ("[Plaintiffs] were compelled to employ an attorney and his fee not specifically as an attorney fee but as an item of damage is recoverable in the present action."). As it is described in both *Elijah* and *Trinidad Bean & Elevator*, the wrong-of-

---

**2.** *See, e.g., Taylor v. S. Pac. Transp. Co.*, 130 Ariz. 516, 637 P.2d 726, 733 (1981); *Dalo v. Kivitz*, 596 A.2d 35, 37–38 (D.C.1991); *Clark–Peterson Co. v. Ind. Ins. Assocs., Ltd.*, 514 N.W.2d 912, 917 (Iowa 1994); *O'Brien v. New England Tel. & Tel. Co.*, 422 Mass. 686, 664 N.E.2d 843, 850 (1996); *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729, 744–45 (1999); *Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 181 (Okla.2000); *Wells v. Aetna Ins. Co.*, 60 Wash.2d 880, 376 P.2d 644, 645 (1962). *See also* Restatement (Second) of Torts § 914(2) (1979).

**3.** If understood as a separate tort, the wrong-of-another doctrine might be "read to entitle exonerated defendants in commonplace, multiparty tort actions to recover their attorney's fees from *unrelated* codefendants who were held liable." *Davis v. Air Technical Inds., Inc.*, 22 Cal.3d 1, 148 Cal.Rptr. 419, 582 P.2d 1010, 1014 n. 9 (1978) (emphasis added). Such a result would greatly erode the American rule that parties are generally responsible for their own costs and fees. Instead, a wrong-of-another claim must be premised on either the existence of a duty owed by the defendant to the plaintiff or some other legal entitlement to recover other than the mere fact of damages incurred in the form of attorneys' fees.

**4.** Even this court has, in passing, cast the wrong-of-another doctrine as an exception to the American rule. *See Brochner v. Western Ins. Co.*, 724 P.2d 1293, 1300 (Colo.1986). However, this is something of a misnomer. In seeking a damages award against a wrongdoer under the wrong-of-another doctrine, a party is still responsible for its own attorney's fees.

another doctrine simply recognizes that attorneys' fees may be used in calculating damages; it does not replace the threshold assessment of the defendant's liability for a wrongful act. *See Elijah*, 674 P.2d at 951; *Trinidad Bean & Elevator Co.*, 79 Colo. at 287, 245 P. at 489; *see also* Restatement (Second) of Torts § 914 (1979) (featuring a restatement of the wrong-of-another doctrine in the chapter on damages); 25 C.J.S. Damages § 79 (2009) (same). When a party is driven to engage in litigation that, because of another's wrong, is reasonably necessary in order to protect his legal interests, the costs he incurs may form the basis of a claim of damages.

■ Parsons argued, and the court of appeals agreed, that the festival's claim for damages should be barred because the festival was held partially liable in the underlying dispute with the town and ordered to pay just under $100,000 of the town's bill for $1.6 million. For this, Parsons relies on *Brochner v. Western Insurance Co.*, in which we held that the wrong-of-another doctrine is applicable "only if the party seeking such attorney fees was without fault as to the underlying action." 724 P.2d 1293, 1300 (Colo.1986).

However, Parsons misreads the rule of *Brochner*, which must be understood in the context of its formulation. That case involved a suit between joint tortfeasors, a doctor and a hospital, after a patient was injured during an unnecessary craniotomy. *See id.* at 1294–95. Both the doctor and the hospital settled with the injured patient, and then the hospital sued the doctor to recover the fees it incurred by defending the patient's action. *See id.* Upon reviewing the claim, we determined that the hospital had a duty to the patient to oversee the doctor's conduct after it had become aware that the doctor was performing unnecessary brain surgeries, *id.* at 1299, and so we reasoned that the hospital had been forced to defend a suit from the patient "because of the hospital's independently negligent conduct, and not solely because of [the doctor's] negligence." *Id.* at 1300. Moreover, the hospital's liability had been limited, under pertinent statutory provisions, to its

own contribution to the patient's injuries. *See id.* at 1298–99. Thus, the hospital was sued for its breach of its own duty of care to the patient, and all the costs the hospital incurred were due to its own wrong, not that of another. For these reasons, we concluded that the hospital could not recover its litigation fees from the doctor.

Therefore, the central concern of *Brochner* was not, as Parsons contends, whether the plaintiff had been held liable in the underlying dispute. Indeed, because the doctrine often serves as a form of indemnity for a plaintiff who lost in the underlying litigation, such a targeted focus on the plaintiff's liability would often run contrary to the doctrine's purpose. *See Elijah*, 674 P.2d at 951 (holding that it is not mandatory that the plaintiff have prevailed in the earlier litigation in order to seek damages under the wrong-of-another doctrine, and noting that the defendant's misconduct had been the very cause of the plaintiff's defeat in the earlier litigation). Rather, our discussion in *Brochner* was akin to a proximate cause determination, focusing on whether the underlying dispute arose from the actions of the parties then litigating it, or whether instead the dispute was thrust upon those litigants by some third party.

Because the question posed by *Brochner* concerns the cause of the underlying dispute rather than the ultimate holding of liability, the mere fact of the festival's *partial liability* in the earlier case does not foreclose its ability to seek wrong-of-another damages as a matter of law. That said, the question remains as to whether a plaintiff may recover litigation expenses when he was a *partial cause* of the underlying dispute, that is, where the plaintiff's own actions precipitated—at least in part—the underlying dispute.

The court of appeals has recognized that it is sometimes appropriate for a plaintiff alleging wrong-of-another damages to seek to recover his litigation costs with respect to a distinct subset of claims as opposed to an entire litigation. *See Swartz v. Bianco Family Trust*, 874 P.2d 430, 434–35 (Colo.App. 1993), *cert. denied* (1994) (interpreting the pre-*Elijah* court of appeals case, *McNeill*, 35 Colo.App. 317, 534 P.2d 813). Specifically, the court in *Swartz* held that a party may

recover attorneys' fees incurred during litigation in which the underlying dispute is litigated alongside the dispute with the third-party wrongdoer. *See id.*[5] As the court of appeals noted, "[t]o conclude otherwise would require that separate lawsuits be filed involving the same subject matter and parties with the attendant expense to the litigants and the resultant burden upon the judicial system." *Swartz,* 874 P.2d at 434–35.

■ The court of appeals' insight in *Swartz* applies with equal force to the more traditional wrong-of-another circumstance where the underlying dispute for which attorneys' fees are sought was brought in a separate action. Any requirement that a defendant have caused the underlying dispute in its entirety in order for a plaintiff to recover under the doctrine would encourage plaintiffs to split up actions unnecessarily. We will not install a per se bar against a plaintiff's recovery for distinct claims litigated in the underlying action merely because other claims litigated in the same action were unrelated to the defendant's wrongful conduct.

■ However, neither will we allow litigants to sift through past litigations and abstract small components from what should be understood as singular disputes in an attempt to recoup their litigation costs. To this end, we find the method for claim segregation outlined in *Hensley v. Eckerhart* instructive, though it was developed in a different context. 461 U.S. 424, 434–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Hensley,* the United States Supreme Court considered whether an award of attorneys' fees under a fee-shifting statute could be levied when the plaintiff was successful in some claims and not in others. *See id.* The Court deter-

mined that, where a plaintiff had brought multiple claims "involv[ing] a common core of facts" or "based on related legal theories," counsel's efforts on an individual claim could not be distinguished from work on the whole of the litigation, and thus a reduction in the fee award for work done on unsuccessful claims would be inappropriate. *Id.* at 435. On the other hand, where the plaintiff presented "distinctly different claims for relief that [were] based on different facts and legal theories," the litigation could be justly conceived as a "series of discrete claims" that had been "raised in separate lawsuits," and so a fee award that contemplated only those claims on which the plaintiff had succeeded was both practicable and necessary to affect the purpose of the fee-shifting statute. *Id.; see also McKenna v. City of Philadelphia,* 582 F.3d 447, 457–58 (3d Cir.2009) (discussing *Hensley's* lessons for reducing fee awards for unsuccessful trial claims); *Tutor–Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1063–64 (9th Cir.2006) (applying the *Hensley* method to a defendant's request for fees incurred while defending against frivolous claims that were paired with non-frivolous claims); *City of Wheat Ridge v. Cerveny,* 913 P.2d 1110, 1116 (Colo.1996) (adopting *Hensley's* principle of claim segregation for awards of attorneys fees in Amendment 1 cases).

■ Applying the distinction to the wrong-of-another circumstance at issue here, where the claims for which a plaintiff seeks wrong-of-another damages cannot be conceptually distinguished from the remainder of the underlying dispute, no award tailored to a subset of claims shall issue. If, however, the subset of claims for which a plaintiff seeks litigation costs was founded in a dis-

---

5. The holding in *Swartz* has since been incorporated into a jury instruction regarding contract interference, which reads:

> Where, as a result of the defendants' tortious interference with the plaintiff's contract, the plaintiff incurs attorney fees in litigating other *claims* against the defendants and a third-party, plaintiff is entitled to recover those attorney fees as damages....

CJI–Civ. 4th 24:7 (emphasis added). Courts in other jurisdictions have come to similar conclusions. *See, e.g., Clark–Peterson Co. v. Ind. Ins. Assocs.,* 514 N.W.2d 912, 917 (Iowa 1994) (holding a plaintiff was entitled to recover fees expended on the "declaratory judgment portion" of the action at bar under a wrong-of-another doctrine); *Prentice v. North Am. Title Guaranty Corp.,* 59 Cal.2d 618, 30 Cal.Rptr. 821, 381 P.2d 645, 647 (1963) ("[T]here is no reason why recovery of such [attorneys'] fees should be denied simply because the two causes (the one against the third person and the one against the party whose breach of duty made it necessary for the plaintiff to sue the third person) are tried in the same court at the same time.").

tinct core of facts and premised on distinct legal theories, the plaintiff can attempt to show the subset is uniquely traceable to the defendant's alleged wrong, and so seek costs incurred by litigating those claims. Of course, his ultimate success in such an action relies upon his ability to establish those elements of the tort or contract theory on which his claim for wrong-of-another damages is premised.

 Allowing for claim segregation in the wrong-of-another context ensures that a wrongdoer will not escape liability merely because his wrong adversely impacted parties already in litigation with one another. However, the determination of whether claims are interrelated or segregable is inherently sensitive to the facts of both the case at bar and those of the underlying dispute. Thus, as it is in other contexts, segregability for the purposes of wrong-of-another damages must be "an equitable judgment entrusted to the discretion of the factfinder, to be made on the basis of all the circumstances of the litigation." *Lipsett v. Blanco,* 975 F.2d 934, 940 (1st Cir. 1992) (discussing awards under a fee shifting statute).

 In sum, where one party's wrong results in the plaintiff's litigation of distinct and segregable claims against another party, the litigation costs associated with those claims may form the basis of an award of damages in an action between the plaintiff and the wrongdoer.

### B. Application

 Having clarified that the wrong-of-another doctrine is not a separate tort but instead merely frames certain claims for damages, we turn to the festival's pursuit of wrong-of-another damages in the case at bar. We must review the trial court's grant of Parsons' motion for summary judgment de novo, ever mindful that summary judgment is appropriate only when the pleadings and supporting documents show there to be no genuine issues as to any material fact, and thus that the moving party is entitled to summary judgment as a matter of law. *See Brodeur v. Am. Home Assur. Co.,* 169 P.3d

139, 146 (Colo.2007); C.R.C.P. 56(c). When assessing Parsons' motion, the festival is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts; all doubts must be resolved in the festival's favor. *See In re Tonko,* 154 P.3d at 402.

 "In order to establish a prima facie case for negligence, a plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that the defendant's breach caused the plaintiff's injury." *HealthONE v. Rodriguez ex rel. Rodriguez,* 50 P.3d 879, 888 (Colo.2002). Although it is rare that a hired expert such as Parsons owes any legal duty of care to non-contracting third parties, such a duty may arise based on the details of its contractual obligations or some pertinent statutory scheme. *See, e.g., Scott Wetzel Services, Inc. v. Johnson,* 821 P.2d 804, 812 & n. 10 (Colo.1991) (statutorily imposed duties); *Morvay v. Hanover Ins. Cos.,* 127 N.H. 723, 506 A.2d 333, 335 (1986) (duties arising from contractual obligations and special relationships with contracting party). As such, the trial court was free to conclude Parsons owed the festival a legal duty of care where Parsons' contract with the town included services for "regulatory guidance" and "compliance assistance" with regard to the town's wastewater systems.

However, due to the trial court and court of appeals' limited basis for granting the motion for summary judgment, our review is focused solely on the issue of damages. Accordingly, we pass no judgment on the viability or merits of the festival's negligence claim with regard to the elements of duty, breach of duty, or proximate cause as those issues have not been developed in the underlying judgments, or included within our grant of certiorari. Both the court of appeals and the trial court focused their analysis solely on the element of damages, essentially reasoning that the festival's partial liability in the underlying litigation with the town precluded its ability to pursue its action against Par-

sons.[6] Thus, only the element of damages and those concerns presented by the wrong-of-another circumstances of this case are before us for consideration.

As we explained above, there is no per se bar against the festival's claim for attorneys' fees against Parsons merely because it was partially liable to the town for other claims in the previous litigation. However, the trial court in the previous action between the town and the festival held that it was "without significant dispute" that the festival owed the town at least some unpaid water tap fees. Thus, the festival's unpaid water usage at least partially caused the underlying litigation. Presuming for the sake of summary judgment that Parsons proximately caused the festival's earlier wastewater litigation with the town after breaching an owed legal duty of care, the question becomes whether that wastewater claim can be segregated from the litigation over water usage, which was precipitated by the festival's own conduct.

We conclude for the sake of summary judgment only that the claims are segregable. The undisputed facts in the record support the reasonable inference that the festival's water and wastewater claims in the previous litigation were founded on different facts and pursued under different legal theories. Although Parsons' water and wastewater systems analyses were presented in a single report, they were based on entirely distinct analytical methods and evaluated separately during the previous litigation. Moreover, the festival's legal obligations to pay the two components of the town's bill—those for water and those for wastewater systems usage—were distinct. Applying the appropriate standard of review, the festival's

prior claims appear segregable, and so its pursuit of attorneys' fees against Parsons is not barred as a matter of law. As such, whatever the merits of its arguments on the remaining elements of its negligence claim, the festival has established that there remain genuine issues of material fact with respect to its claim for damages, and so summary judgment is inappropriate on that issue.

The court of appeals also noted that the festival had thus far failed to provide an accounting of its alleged damages or specify precisely what portion of the fees it incurred in the prior case were attributable to Parsons' alleged wrongdoing. It is certainly true that the festival cannot "rest upon mere allegations" when opposing a motion for summary judgment, but must "set forth specific facts showing that there is a general issue for trial." C.R.C.P. 56(e); *see also Smith v. Mehaffy*, 30 P.3d 727, 730 (Colo.App.2000). However, Parsons' motion for summary judgment did not challenge the existence of such attorneys' fees or their ability to be calculated; rather, Parsons merely contended that such fees would not be cognizable as a matter of law. As a result, the trial court's and the court of appeals' decisions rest on the limited grounds that the festival could not, as a matter of law, pursue damages under the wrong-of-another doctrine.

## IV. Conclusion

The bar against the festival's recovery imposed by the court of appeals and the trial court in this case is contrary to the wrong-of-another doctrine in Colorado, and there exist genuine issues as to the material facts surrounding the festival's claim for damages, precluding a grant of summary judgment on

---

6. Both the trial court and the court of appeals refused to extend the wrong-of-another doctrine to the circumstances of this case. Accordingly, both courts granted the motion for summary judgment on the narrow grounds that the festival was precluded from proving damages under the wrong-of-another doctrine. Despite this narrow reasoning, both courts employed broader language to support their determinations to grant Parsons' motion for summary judgment. Specifically, the trial court stated that Parsons had not breached its duty to the festival, while the court of appeals stated that Parsons had not proximately caused the festival's alleged damages.

However, neither court provided any legal reasoning on those two conclusions; their analyses instead pivot solely on whether the festival's earlier partial liability obstructs their ability to pursue their claim for damages against Parsons. Moreover, the parties have exclusively argued about the issue of viable damages on appeal. As such, our review of the trial court and court of appeals' decisions is limited solely to the legal issue of whether the festival proved damages under the wrong-of-another doctrine. Accordingly, we determine that the remainder of the festival's negligence claim is not before us for our determination, and so we do not consider it.

that limited basis. As such, the judgment of the court of appeals is reversed.

Justice EID dissents, and Chief Justice MULLARKEY and Justice COATS join in the dissent.

Justice EID, dissenting.

I respectfully dissent from the majority's opinion on two grounds. First, the majority erroneously holds that wrong-of-another damages are available to the festival even though there is no negligence claim (or any other theory of substantive liability) remaining in this case. The trial court dismissed the festival's negligence claim on summary judgment on the ground that the festival had produced no evidence that defendants had caused the festival's alleged damages, and the court of appeals affirmed that ruling. Before us, the festival maintains the untenable position that it was not required to produce any evidence of causation to withstand summary judgment. In my view, the majority's opinion discussing the hypothetical availability of wrong-of-another damages simply cannot resurrect the festival's negligence claim in this case. Because the festival has no substantive claim to which the wrong-of-another damages may attach, its effort to recover such damages must necessarily fail.

Second, even if the festival still possessed a substantive claim, its claim for wrong-of-another damages must be rejected. Under well-established precedent, such damages are available "only if the party seeking such attorney fees was without fault as to the underlying action." *Brochner v. W. Ins. Co.*, 724 P.2d 1293, 1300 (Colo.1986). Because the festival was plainly "[at] fault" in the underlying action—indeed, it was ordered to pay close to $100,000 in water and wastewater fees to the town—it is barred from recovering wrong-of-another damages. By jettisoning the "at fault" limitation, the majority not only ignores our well-established precedent, it broadly expands the circumstances under which wrong-of-another damages are avail-

able in Colorado. Because such expansion is particularly unwarranted in a case in which no substantive claim for liability exists, I respectfully dissent from the majority's opinion.

### I.

The Restatement defines the wrong-of-another doctrine as:

> One who through *the tort of another* has been required to act in the protection of his interests by bringing or defending an action against a third person *is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures* thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts, § 914(2) (1979) (emphasis added). As the majority properly recognizes, the wrong-of-another doctrine is not a free-standing tort claim; rather, it is an element of damages a party may claim once she has successfully established that the "[ ]other" committed a "tort" by thrusting her into litigation. Maj. op. at 1071–72, 1074. Under the majority's own reasoning, the festival cannot recover wrong-of-another damages because no substantive claim remains in the case.

In its complaint against the defendants, the festival raised a number of substantive theories of liability, including negligence. The trial court dismissed all of the festival's claims on summary judgment. In analyzing whether its negligence claim could survive summary judgment, the trial court found that the festival had failed to produce any evidence that the defendants had caused the festival's alleged damages. The trial court reasoned that because the festival did in fact owe money to the town (albeit considerably less than what was originally assessed), there was no evidence that the defendants caused the festival's alleged damages. In other words, the festival would have been in the same position regardless of the defendants' actions.[1]

---

1. The trial court also found that, while the defendants owed a duty to the festival, they did not breach that duty, on the ground that they were correct in their determination that the festival owed the town money. While the festival ap-

pealed the trial court's determination that the defendants did not breach a duty, the defendants did not cross-appeal the determination that they owed the festival a duty in the first instance. The

The court of appeals expressly affirmed the trial court's summary judgment ruling as to causation. *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, No. 08CA349, slip op. at 16–19 (Colo.App. Mar. 19, 2009) (not selected for official publication). The court concluded that "[t]he festival provided the trial court *with no facts* to support its argument that it incurred damages beyond what it would have incurred if the [defendants] had advised the town that the festival owed only $95,700, as opposed to $1,662,470.98." *Id.* at 17 (emphasis added). In other words, the festival would have expended litigation costs even if defendants had arrived at the $95,700 figure, rather than the $1.6 million figure. The court of appeals reiterated its conclusion, noting that the trial court properly determined "that the festival failed to show that its rights were infringed, and that there was a reasonable basis for the damages [claimed]." *Id.* at 18. The court of appeals noted that the festival had argued that the simple fact that it was drawn into litigation with the town established damages. The court rejected this line of reasoning, noting that "[a]gain, this does not answer the question of how the festival suffered greater damages than it would have if the town had sought only $95,700." *Id.* Finally, the court noted the festival had argued that it was a matter of "common sense" and that "no intelligent person could reasonably dispute" that the expense associated with defending against a $1.6 million claim would be greater than the expense associated with defending a $95,700 claim. The court rejected this argument, noting that "[a]gain, the festival fails to allege any facts to support its contentions, relying solely on unfounded assumptions." *Id.* at 19. The court concluded that summary judgment against the festival on its negligence claim was proper because there was no evidence that the defendants caused the festival's damages. *Id.*

The festival argues to us that it was not required to produce evidence of causation because it was not on notice that the defendants' summary judgment motion challenged its claim on that ground.[2] It contends that it

now stands ready to produce such evidence. I would find that the festival's offer of proof regarding causation comes far too late. Before the court of appeals, the festival argued that it was a matter of "common sense" that the defendants' actions caused it to incur damages; it neither pointed to evidence of causation, nor argued that it was precluded from doing so by the trial court. Furthermore, the festival was plainly on notice that causation was at issue on summary judgment; as the festival admits, the defendants argued in their summary judgment motion that "there is no causal connection between [the defendants'] alleged negligence and the [festival's] alleged injury. Stated differently, whether they were negligent or not, [the defendants] did not injure the [festival]." In my view, the court of appeals was correct to find that the festival's negligence claim was properly dismissed by the trial court on the ground that it failed to produce evidence of causation. Because the festival's negligence claim was properly dismissed, it can no longer recover wrong-of-another damages based on that claim.

The majority briefly addresses these issues at the very end of its opinion, finding that the court of appeals "noted that the festival had thus far failed to provide an accounting of its alleged damages or specify precisely what portion of the fees it incurred in the prior case were attributable to [the defendants'] alleged wrongdoing." *Id.* It concludes that the defendants' summary judgment motion "did not challenge the existence of such attorneys' fees or their ability to be calculated." *Id.* The majority's analysis, in my view, misses the mark. The trial court dismissed the negligence claim *not* because the festival failed to set forth its alleged damages with sufficient specificity as the majority assumes, but because it failed to bring forth any evidence that the defendants caused their injury. In sum, the festival failed to satisfy one of the required elements of a negligence claim—namely, causation.

court of appeals did not reach the duty or breach issues in its opinion.

**2.** In addition to granting certiorari on the wrong-of-another issue discussed by the majority, we granted certiorari on the question of "[w]hether

Rocky Mountain Festivals was obligated, in responding to a motion for summary judgment, to prove up its damages even though the absence of damages was not one of the issues raised as a basis for the [summary judgment] motion."

We should affirm the dismissal of the festival's negligence claim and hold that wrong-of-another damages are therefore unavailable.

Under the majority's opinion, the case will be remanded to the trial court, apparently for consideration of the viability of the festival's negligence claim. *See, e.g.,* maj. op. at 1074 ("we pass no judgment on the viability or merits of the festival's negligence claim with regard to the elements of duty, breach of duty, or proximate cause"). The trial court, having dismissed the case on causation before (and having been affirmed by the court of appeals on that ground), will simply do so again. The majority's opinion on wrong-of-another damages will simply have no effect on this case. Nothing in the majority's consideration of wrong-of-another damages can resurrect the festival's negligence claim. Accordingly, I would affirm the court of appeals' decision on the ground that the festival has no negligence claim to which wrong-of-another damages could attach.

## II.

While the court of appeals' discussion of wrong-of-another damages has no precedential effect, *see* C.A.R. 35(f),[3] the majority's opinion on the issue today does. In my view, the majority wrongly departs from our precedent limiting wrong-of-another damages to cases where the plaintiff was not at fault in the underlying litigation.

In *Brochner v. Western Insurance Co.,* we stated that wrong-of-another damages are appropriate "only if the party seeking such attorney fees *was without fault* as to the underlying action." 724 P.2d 1293, 1300 (Colo. 1986) (emphasis added). The festival here was "[at] fault," at least in part, in the underlying litigation because it owed the town $95,700. The festival therefore cannot, under our clear precedent, recover wrong-of-another damages.

The majority attempts to distinguish *Brochner* by stating that there we were concerned about "the cause of the underlying dispute rather than the ultimate holding of liability." *Brochner,* 724 P.2d at 1300. The majority's observation is undoubtedly correct, but that observation in no way distinguishes *Brochner* from the case before us. There, a patient sued the hospital and the doctor based on allegedly negligent treatment. The hospital then attempted to recover, from the doctor, the litigation costs it expended in the patient's lawsuit. We held that the hospital could not recover the fees because it "was required to expend sums for attorney fees and costs in defending the [patient's] lawsuit, in part because of the hospital's independently negligent conduct, and not solely because of [the doctor's] negligence." *Brochner,* 724 P.2d at 1300. In other words, the hospital was involved in litigation in part because of the doctor's conduct, but not solely because of it. That is precisely the case here. The festival was involved in litigation with the town "in part because of [its] independently negligent conduct"—that is, its refusal to pay $95,700 in water and wastewater fees—"and not solely because of [the defendants'] negligence." To use the majority's own words, the costs incurred by the festival were in part due to its "own wrong," not solely because of the wrong of "another." Maj. op. at 1072. And that is precisely the situation in which *Brochner* stated that wrong-of-another damages are unavailable.

We have consistently limited recovery of wrong-of-another damages to cases where the plaintiff was not responsible for bringing the litigation about. In *Brochner* we cited *Elijah v. Fender,* 674 P.2d 946 (Colo.1984), where the plaintiffs sued their real estate broker for concealing his side negotiations with the other party to the real estate transaction. Because of the concealment, the plaintiffs were forced into litigation with a third party to quiet title to the land that was the subject of the transaction. We permitted the plaintiffs to recover their attorney fees from the broker stemming from the quiet title litigation with the third party. We stated that "[w]ere it not for [the broker's wrongful] actions ..., the [plaintiffs] would not" have been involved in litigation with the third party. *Id.* at 951. *See also id.* (noting that the

---

**3.** In addition, having determined that the festival's negligence claim was properly dismissed on summary judgment on the issue of causation, the court of appeals' discussion of wrong-of-another damages was unnecessary to its holding. *Rocky Mountain Festivals,* slip op. at 10–16.

broker's "actions were the very cause of the [plaintiffs'] defeat in [the action with the third party]"). Similarly, in another case cited by *Brochner, International State Bank of Trinidad v. Trinidad Bean & Elevator Co.*, 79 Colo. 286, 287, 245 P. 489, 489 (1926), the plaintiff was "forced" into litigation with a third party over the ownership of goods that the plaintiff had entrusted to the defendant's care after the defendant had fraudulently stated that the third party had an ownership interest in the goods as well. Again, it was clear that the plaintiff was "forced" into the litigation by the wrongful act of the defendant; stated differently, the plaintiff did nothing to bring the litigation with the third party about.

While these cases do not flesh out the reasoning behind the "without fault" limitation, their rationale is implicit: unless the plaintiff was truly "required" to litigate with the third party to protect its interests put in jeopardy by the tort of another, attorney fees are not recoverable. *See* Restatement (Second) of Torts, § 914(2) (1979) (using the term "required"). Where the plaintiff was responsible for bringing the third-party litigation about herself, she was not "required" to litigate; to put it differently, she could have simply ceased her wrongful conduct. The "without fault" limitation simply recognizes the fact that litigation comes about through a myriad of factors, including the conduct of others and the conduct of the plaintiff herself. Instead of sorting through the multiple causal inputs that bring a particular litigation about, we in Colorado have (up to today) simply held that attorney fees are not recoverable under the wrong-of-another doctrine unless the litigation was caused solely by the defendant's tortious conduct. In my view, the majority wrongly jettisons this common sense and longstanding limitation on liability.

The cases upon which the majority relies do not justify this result. The first, *Swartz v. Bianco Family Trust*, 874 P.2d 430 (Colo. 1994), involved the rather straightforward question of whether a plaintiff may litigate, in the same suit, the legal dispute caused by the other *and* the claim against the other for wrongfully causing that dispute. As applied to the facts of this case, the question would be whether the festival could, in the same action, litigate the fee dispute with the town

and the claim against the defendants for wrongfully causing that dispute. The court of appeals determined that such a consolidated action was permissible. *Id.* at 434. But the case had nothing to do with whether the legal dispute had to come about through no fault of the plaintiff; in fact, the case reiterated the rule that wrong-of-another damages may be recoverable "if the wrongful acts of a third person required the claimant to engage in separate litigation to protect or preserve the claimant's rights." *Id.*

The majority goes even farther afield by relying on *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *Hensley* involved the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which expressly permits the recovery of attorney fees by a "prevailing party" in a federal civil rights action. In that case, the Supreme Court held that the prevailing party who is only partially successful in civil rights litigation should be permitted to recover fees only on the portion of the case in which it succeeded, not the entire amount expended on the litigation as a whole. 461 U.S. at 436, 440, 103 S.Ct. 1933. The differences between the *Hensley* case and the case at bar are obvious and dispositive. *Hensley* involved an express statutory authorization for attorney fees in the civil rights context, in which "fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." 461 U.S. at 445, 103 S.Ct. 1933 (Brennan, J., concurring in part and dissenting in part) (internal quotation marks and citation omitted). Here, by contrast, there is no such statutory purpose, or even a statute. Instead, we are interpreting a common law doctrine that has, again until today, been carefully limited to cases in which the plaintiff is "without fault." While the majority is correct that the festival's claim for attorney fees in this case could, under *Hensley*, be "conceptually" divided between the claims for water fees (which it eventually was ordered to pay) and the claims for wastewater fees (which it was not), maj. op. at 1073–74, 1075, there is simply no basis in Colorado law for doing so.

Finally, I note that this is an especially inappropriate case in which to expand the

wrong-of-another doctrine in Colorado. In this opinion, the majority is putting the damages "cart" before the liability "horse." And while the majority may understand that it is only discussing the damages portion of the case and leaving the liability portion untouched, *see* maj. op. at 1074 (noting that it "pass[es] no judgment on the viability or merits of the festival's negligence claim"), its judgment will inevitably have an important impact on liability. That is because the generous damages formulation adopted by the majority today will encourage suits against experts and others who provide advice to decisionmakers, who in turn make decisions affecting third parties. In my view, if the majority wishes to revisit the scope of the wrong-of-another doctrine in Colorado, it should do so in a case in which the defendant's tort liability has been firmly established, not through the backdoor of damage calculations.

### III.

For these reasons discussed above, I respectfully dissent from the majority's opinion.

I am authorized to say that Chief Justice MULLARKEY and Justice COATS join in this dissent.